BOOK 1323 PAGE 1

## HOME ASSOCIATION DECLARATION

THIS DECLARATION, made as of the 24th day of October, 1974, by ROCK VENTURE, an Arkansas joint venture, hereinafter referred to as "Declarant".

W I T N E S S E T H :

WHEREAS, Declarant is the owner of certain real property in Pulaski County, Arkansas, which is more particularly described as:

> Part of a tract of land located in Sections 5 and 6, Township 1 South, Range 13 West. More particularly described as follows:
>
> Beginning at the Southwest corner Southwest 1/4 Southwest 1/4 Section 5, Township 1 South, Range 13 West; thence North 88°19' East 1299.3'; thence North 89°01' East 619.0'; thence North 6°30' East 305.7'; thence North 10°08' East 200.2'; thence North 17°06' East 265.8'; thence North 21°34' East 919.4'; thence North 89°23' West 1373.5'; thence North 1°03' West 352.6'; thence North 89°44' West 1021.4'; thence North 0°06' East 673.4'; thence East 1254.0'; thence North 3022.8'; thence West 1254.0'; thence South 472.5'; thence West 364.0'; thence North 472.5'; thence West 280.0'; thence South 995.0'; thence West 208.5'; thence South 485.5'; thence S 83°42' West 209.8'; thence North 1503.5'; thence West 1579.0'; thence South 0°24' West 3031.6'; thence South 89°48' West 673.0'; thence South 1°10' East 2640.0'; thence South 89°27' East 600.6'; thence South 89°27' East 2677.8' to the point of beginning, containing 545.86 acres more or less.
>
> Less and except the following described parcels of land:
>
> Part of the Southwest 1/4 Southwest 1/4, Section 5 and part of the Northwest 1/4 Southwest 1/4, Section 5, Township 1 South, Range 13 West, Pulaski County, Arkansas, more particularly described as:
>
> Commencing at the Northwest Corner of said Northwest 1/4 Southwest 1/4; Thence South 130.0'; Thence South 1°28'48" East 527.72'; Thence South 89°32'06" East 314.38' to the point of beginning; Thence East 704.99'; Thence South 0°48'01" East 358.04'; Thence South 727.0'; Thence along a curve to the right a chord bearing and distance of North 87°04'19" West 391.51'; Thence South 18°34'52" West 247.92' to the point of curvature of a curve to the right; Thence along said curve to the

EXHIBIT A

BOOK 1323 PAGE 2

right a chord bearing and distance of South 48°48'51" West 318.90'; Thence South 70°49'16" West 243.52'; Thence North 26°33'54" West 89.44'; Thence North 50°54'22" West 103.08'; Thence North 31°49'39" West 170.66'; Thence North 24°10'37" East 515.9'; Thence North 24°36'28" East 549.95'; Thence North 330.0' to the point of beginning, containing 26.463 Acres, more or less.

Part of the Southeast 1/4 Northeast 1/4 Section 6 and part of the Northeast 1/4 Southeast 1/4 Section 6 Township 1 South, Range 13 West, Pulaski County, Arkansas, more particularly described as:

Beginning at the Southeast Corner of said Southeast 1/4 Northeast 1/4; Thence South 130.0'; Thence South 89°01'44" West 472.07'; Thence South 21°02'15" West 195.0'; Thence South 0°20'31" West 335.01'; Thence North 88°32'19" West 196.06'; Thence North 72°13'43" West 327.63'; Thence North 6°08'14" East 374.14'; Thence South 83°28'49" East 35.23'; Thence North 19°14'13" East 203.35'; Thence North 56°45'22" West 319.24'; Thence North 69°15'41" East 550.68'; Thence North 21°48'05" West 350.04'; Thence North 65°29'50" East 807.74'; Thence South 21°02'15" East 431.78'; Thence South 69°51'49" West 63.91'; Thence South 0°40'26" East 425.03'; Thence West 45.01'; Thence South 0°36'11" East 190.01' to the point of beginning, containing 26.652 Acres, more or less.

Part of the Southwest 1/4, Section 5, Township 1 South, Range 13 West Pulaski County, Arkansas, more particularly described as:

Commencing at a point where the South line of the Southwest 1/4 of Section 5 intersects the West Right-of-Way line of Arkansas Highway No. 5 (Stagecoach Road); Thence South 88°32'17" West along the South line of said Section 5 862.28' to the point of beginning; Thence continuing along the South line of said Section 5 818.10'; Thence North 18°01'11" West 436.41'; Thence North 70°49'16" East 243.52'; Thence along a curve to the left a chord bearing and distance of North 48°48'51" East 318.90'; Thence North 18°34'52" East 247.92'; Thence South 87°04'19" East 391.15'; Thence South 0°49'16" East 907.10' to the point of beginning, containing 14.922 acres, more or less.

Part of the Northwest 1/4 Northwest 1/4 Section 5, Township 1 South, Range 13 West, Pulaski County, Arkansas, more particularly described as:

Beginning at the Northeast Corner of said Northwest 1/4 Northwest 1/4; Thence South 89°51'37" West 820.0'; Thence South 255.0'; Thence South 89°20'00" West 430.08'; Thence South 330.22'; Thence South 70°32'11" East 405.15'; Thence North 13°15'59" East 252.74'; Thence North 89°22'16" East 820.05'; Thence North 442.0' to the point of beginning, containing 12.023 Acres more or less.

BOOK 1323 PAGE 3

Part of the Northeast 1/4 Northeast 1/4 Section 6, Township 1 South, Range 13 West, Pulaski County, Arkansas more particularly described as:

Commencing at the Northeast corner of said Northeast 1/4 Northeast 1/4; Thence South 88°53'54" West 362.03' to the point of beginning; Thence continue South 88°53'54" West 260.05'; Thence South 0°57'54" West 475.07'; Thence North 88°55'52" East 268.05'; Thence North 475.0' to the point of beginning containing 2.875 Acres, more or less.

Part of the Northeast 1/4 of Section 6, Township 1 South, Range 13 West, Pulaski County, Arkansas, more particularly described as:

Beginning at the Northwest Corner of the Northeast 1/4 of said Section 6; Thence North 89°36'26" East 1605.04'; Thence South 0°11'10" West 616.0'; Thence North 89°16'45" East 1590.13'; Thence North 1°11'30" West 625.14' to the point of beginning, containing 22.758 Acres, more or less.

Part of the Northeast 1/4 Southwest 1/4 of Section 6 and part of the Southeast 1/4 Southwest 1/4 of Section 6, Township 1 South, Range 13 West, Pulaski County, Arkansas, more particularly described as:

Commencing at the point of intersection of the South line of said Southeast 1/4 Southwest 1/4 and the West line of Arkansas Highway No. 5 (Stagecoach Road); Thence along a curve to the right a chord bearing and distance of North 9°27'44" East 760.34' to the point of beginning; Thence continue along the West line of said Highway North 22°08'43" West 928.50'; Thence North 89°54'54" West 1350.0'; Thence South 727.0'; Thence North 86°19'22" East 389.80'; Thence along a curve to the right a chord bearing and distance of South 81°38'03" East 309.29'; Thence South 56°05'37" East 367.49' to the point of beginning, containing 19.912 Acres more or less.

Part of the Southeast 1/4 Southwest 1/4 Section 6 and part of the Southwest 1/4 Southwest 1/4 Section 6, Township 1 South, Range 13 West, Pulaski County, Arkansas more particularly described as:

Beginning at the point of intersection of the South line of the Southeast 1/4 Southwest 1/4 Section 6 and the West line of Arkansas Highway No. 5 (Stagecoach Road); Thence along a curve to the right a chord bearing and distance of North 9°27'44" East 760.34'; Thence North 56°05'37" West 367.49' to the point of curvature of a curve to the left; Thence along said curve to the left, a chord bearing and distance of North 81°38'03" West 309.29'; Thence South 86°19'22" West 389.80'; Thence South 0°49'16" East 907.10' to a point on the South line of said Southwest 1/4 Southwest 1/4; Thence along said line North 88°32'17" East 862.28' to the point of beginning, containing 19.547 Acres, more or less.

BOOK 1323 PAGE 4

Part of the Northwest 1/4 Northwest 1/4 Section 6, Township 1 South, Range 13 West, Pulaski County, Arkansas, more particularly described as:

Beginning at the Northwest Corner of said Northwest 1/4 Northwest 1/4; Thence North 89°05'34" East 442.06'; Thence South 255.0'; Thence South 89°20'00" West 440.0'; Thence North 2°42'56" West 253.28' to the point of beginning, containing 2.571 Acres more or less.

AND WHEREAS, Declarant will convey portions of the above described real property subject to certain covenants, conditions, restrictions, reservations, liens and charges as hereinafter set forth.

NOW, THEREFORE, Declarant hereby declares that all of that real property described above shall be held, sold and conveyed subject to the following easements, restrictions, covenants, conditions, reservations, liens and charges. The easements, restrictions, conditions, and charges are for the purpose of enhancing and protecting the value, desirability and attractiveness of said real property. These easements, covenants, restrictions, conditions and charges shall run with said real property and shall be binding on all parties having or acquiring any right, title or interest in said real property, or any part thereof, and shall inure to the benfits of each owner thereof.

### ARTICLE I
### DEFINITIONS

Section 1. "Association" shall mean and refer to the Otter Creek Homeowners Association, its successors and assigns.

Section 2. "Otter Creek" shall mean and refer to the certain real property hereinbefore described and such additions as may hereafter be brought within the jurisdiction of the Association.

Section 3. "Private Common Areas" shall mean portions of Otter Creek which shall be conveyed to the Association by Warranty Deed with Declarant as grantors, together with all improvements which may at any time hereafter be situated thereon.

BOOK 1323 PAGE 5

Section 4. "Lot" shall mean and refer to a plot of land shown upon any recorded subdivision plat of a Phase of Otter Creek platted as a phase of Otter Creek Community in Pulaski County, Arkansas, with the exception of the Private Common Areas, and lots, plots or tracts of land designated on the recorded plat of a phase of Otter Creek community as Reserved.

Section 5. "Acre" shall mean and refer to each acre of the above described property which has not been platted.

Section 6. "Member" shall mean and refer to every person or entity who holds membership in the Association.

Section 7. "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of a fee simple title, to any acre of the above described property not platted or of a lot, plot or tract as shown on a recorded plat of a portion or all of the above described property, less and except record owners of Lots, plots, or tracts designated on a recorded plat of a portion or all of the above described property as Reserved. Owner shall mean contract sellers, but shall exclude others having an interest merely as security for the performance of an obligation.

Section 8. "Declarant" shall mean and refer to Rock Venture and any other person or entity who may acquire more than one undeveloped lot from the Declarant for the purpose of development.

## ARTICLE II
## MEMBERSHIP AND VOTING RIGHT

Section 1. Every owner of a platted lot, plot or tract and acreage of the above described property shall be a member of the Association. Membership shall be appurtenant to and may not be separated from ownership of any land which is within Otter Creek.

Section 2. The Association shall have two classes of voting membership:

Class A. Class A members shall be all Owners with the exception of the Declarant and shall be entitled to one vote for each platted lot, plot or tract within Otter Creek owned. When more than one person holds an interest in any lot, all such persons shall be members. The vote for such Lot shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any lot.

Class B. The Class B members shall be the Declarant and Declarant shall be entitled to three votes for each platted lot, plot or tract owned within Otter Creek.

Voting For Directors. Each member of the Association shall be entitled to one vote in the election of the Board of Directors. On all other matters as may be subject to the vote of the members, the voting rights shall be as provided in Article VI of the Articles of Incorporation.

BOOK 1323 PAGE 6

## ARTICLE III
## PROPERTY RIGHTS

Section 1. **Members' Easements of Enjoyment.** Every member shall have a right and easement to use and enjoy the Private Common Areas and all improvements constructed thereon, subject, however, to the rules and regulations as promulgated by the Board of Directors of the Association and by the By-Laws of the Association. Said right shall be appurtenant to and shall pass with the title to every Lot within Otter Creek and every acre owned within Otter Creek, not platted of record.

Section 2. **Delegation of Use.** Any member may delegate, in accordance with the By-Laws of the Association, his right of enjoyment of the Private Common Areas and facilities and improvements situated thereon, to the members of his family or tenants who reside on the property.

Section 3. **Title to the Private Common Areas.** The Declarant hereby covenants that fee simple title to Private Common Areas will be conveyed to the Association prior to the due date of the first annual assessment assessed against any Lot or acreage within Otter Creek and that additional private Common Areas will be conveyed to the Association as designated on additional plats of a part or all of the above described property when recorded. fee simple title may be subject to a first mortgage.

## ARTICLE IV
## COVENANT FOR MAINTENANCE ASSESSMENTS

Section 1. **Creation of the Lien and Personal Obligation of Assessments.** The Declarant, for each Lot owned within the Otter Creek and for each acre owned, not platted, within Otter Creek subject to assessment, hereby covenant, and each Owner other than Declarant of any Lot within Otter Creek by acceptance of a deed thereto, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (a) annual assessments or charges, and (b) special assessments for capital improvements, such assessments to be established and collected as hereinafter provided. The annual and special assessments, together with interest, costs and reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the Property against which each such assessment is made. Each such assessment, together with interest, costs and reasonable attorney's fees, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment fell due. The personal obligation for delinquent assessments shall not pass to his successors in title unless expressly assumed by them.

Section 3. **Annual Assessment.** Until January 1 of the year immediately following the conveyance of the first Lot to any Owner, the initial annual assessment shall be Two Hundred Forty Dollars ($240.00) per Lot or $240.00 per dwelling unit whichever is greater. Owners of undeveloped land shall be assessed on the basis of half the maximum density allowed in accordance with the Master Plan.

    (a) From and after January 1 of the year immediately following the conveyance of the first lot to an Owner, the initial annual assessment may be increased each year not more than ten per cent

BOOK 1323 PAGE 7

(10%) above the assessment for the previous year without a vote of the membership.

(b) From and after January 1 of the year immediately following the conveyance of the first Lot to an Owner, the initial annual assessment may be increased above ten per cent (10%) by a vote of two-thirds (2/3) of the votes cast by all members who are voting in person or by proxy, at a meeting duly called for this purpose. Class B membership shall not have the right to vote at this meeting.

(c) The Board of Directors of the Association may set the annual assessment from time to time as they see fit.

Section 4. Special Assessments for Capital Improvements. In addition to the annual assessments authorized above, the Association may levy, in any assessment year, a special assessment applicable to that year only for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Private Common Areas including fixtures and personal property related thereto, provided that any such assessment shall have the assent of the members entitled to cast 2/3 of all votes of members who are voting in person or by proxy at a meeting duly called for that purpose.

Section 5. Declarant's Obligation for Special Assessments, Annual Assessments, or any Charge. Declarant shall not be liable for any charge or assessment, neither annual or special, with respect to any Lot(s) or acre owned by Declarant until or unless Declarant's tenant or agent occupies said Lot or acreage and then only as to such Lot(s) or acreage occupied by tenant(s) or agent(s) of Declarant.

Section 6. Notice and Quorum for any Action Authorized Under Sections 3 and 4. Written notice of any meeting called for the purpose of taking any action authorized under Section 3 or 4 of Article IV shall be sent to all members not less than thirty (30) days nor more than sixty (60) days in advance of the meeting. No quorum shall be required at such meeting, provided, however, those members present in person or proxy must approve the action taken by 2/3 of the votes present in person or proxy.

Section 7. Uniform Rate of Assessment. Both annual and special assessments must be fixed at a uniform rate for all Lots and acreage subject to assessment and may be collected on a monthly basis.

Section 8. Date of Commencement of Annual Assessments; Due Dates. The annual assessments provided for herein shall commence as to all Lots and acreage subject to such assessment on the first day of the month following the conveyance of the Private Common Areas. The first annual assessment shall be adjusted according to the number of months remaining in the calendar year. The Board of Directors of the Association shall fix the amount of the annual assessment against each Lot at least thirty (30) days in advance of each annual assessment period. Written notice of the annual assessment shall be sent to every Owner subject thereto. The due dates shall be established by the Board of Directors of the Association. The

BOOK 1323 PAGE 8

Association shall, upon demand, and for a reasonable charge, furnish a certificate signed by an officer of the Association setting forth whether the assessments on a specified Lot have been paid.

Section 9. Effect of Nonpayment of Assessments; Remedies of the Association. Any assessments which are not paid when due shall be delinquent, and shall constitute a lien on the Lot or acreage against which said assessment is made. If the assessment is not paid within 30 days after the due date, the assessment shall bear interest from the date of delinquency at the rate of 10% per annum, and the Association may bring an action at law against the owner personally obligated to pay the same, or foreclose its lien against the Lot, or both, and interest, costs and reasonable attorney's fees of any such action shall be added to the amount of such assessment. No Owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Private Common Areas or abandonment of his Lot or acreage. Assessment liens shall continue for a period of two (2) years from the date upon which an assessment becomes delinquent, and no longer; provided that if, within such period, proceedings shall have been instituted to enforce such lien in any court in Pulaski County, Arkansas, having jurisdiction in suits for the enforcement of liens, such lien shall continue until the termination of the proceeding and until the sale of such Lot or acreage under execution of the judgment establishing it.

Section 10. Subordination of the Lien to Mortgages. The lien of the assessments provided for herein shall be subordinate to the lien of any first mortgage. Sale or transfer of any Lot shall not affect the assessment lien. However, the sale or transfer of any Lot pursuant to mortgage foreclosure or any proceeding in lieu thereof, shall extinguish the lien of such assessments as to payments which became due prior to such sale or transfer. No sale or transfer shall relieve such Lot from liability for any assessments thereafter becoming due or from the lien thereof.

ARTICLE V
ANNEXATION OF ADDITIONAL PROPERTIES

Section 1. Annexation of additional property shall require the assent of a majority of the votes of the members entitled to vote, at a meeting duly called for this purpose, written notice of which shall be sent to all members not less than 30 days nor more than 60 days in advance of the meeting setting forth the purpose of the meeting. No quorum shall be required for a meeting of the members of the Association to annex additional property.

Section 2. Upon satisfaction of those prerequisities for annexation of any additional lands or properties as set forth in Section 1 of this Article VI, the annexation of such additional lands or properties shall be deemed to be accomplished upon the filing of a notice of such annexation in the office of the Recorder of Deeds of Pulaski County, Arkansas, executed by the owners of all of such additional lands or properties, which notice shall describe such lands or properties and the Private Common Area, if any, located thereon, and shall provide, among other things, that such land and properties are subject to all of the same conditions, restrictions, reservations, liens and charges as are in this Declaration contained excepting only therefrom the provisions fixing the commencement date of the annual assessments, which date will be fixed in said notice.

## ARTICLE VI
### RIGHTS, POWER AND DUTIES OF THE ASSOCIATION

BOOK 1323 PAGE 9

The Association, in addition to all other rights, powers and duties as are herein contained and in its Articles of Incorporation contained, shall have all powers, rights, and privileges which are now or may hereafter be conferred by the laws of Arkansas upon a not-for-profit corporation by Act No. 176 of the Acts of Arkansas of 1963, and any amendments thereto.

## ARTICLE VII
### GENERAL PROVISIONS

Section 1. Enforecement. The Association, or any Owner, shall have the right to enforce, by a proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration. Failure by the Association or by any Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

Section 2. Severability. Invalidation of any one of these covenants or restrictions by judgment or court order shall in no way affect any other provisions which shall remain in full force and effect.

Section 3. Amendment. The covenants and restrictions of this Declaration shall run with and bond the land, and shall inure to the benefit of and be enforceable by the Association, or the Owner of any Lot subject to this Declaration, their respective legal representatives, heirs, successors and assigns for a term of 20 years from the date this Declaration is recorded, after which time said covenants shall be automatically extended for successive periods of 10 years. The covenants and restrictions of this Declaration may be amended during the first 20 year period by an instrument signed by the Owners of not less than 80% of the Lots within the properties and thereafter by an instrument signed by the Owners of not less than 75% of the Lots within the Properties. Any amendment must be property recorded.

DATED as of the 24 day of October, 1974.

FIRST SOUTHERN SERVICE CORPORATION

By _____
President

ATTEST:
_____
Secretary

JACK COLLIER EAST COMPANY, INC.

By _____
President

ATTEST:
_____
Secretary

HODGES, VINES, FOX, CASTIN & ASSOCIATES, INC

By _____
President

ATTEST:

BOOK 1323 PAGE 10

## ACKNOWLEDGMENTS

STATE OF ARKANSAS )
) ss:
COUNTY OF PULASKI )

On this 27th day of December, 1974, before me a Notary Public, duly commissioned, qualified and acting, within and for the said County and State, appeared in person the within named H. J. Wiechern and Georgia F. Creason to me personally well known, who stated that they were the President and Secretary of First Southern Service Corporation, and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 27th day of December, 1974.

_____
Notary Public

My Commission Expires:

My Commission Expires January 17, 1978


STATE OF ARKANSAS )
) ss:
COUNTY OF PULASKI )

On this 27th day of December, 1974, before me a Notary Public, duly commissioned, qualified and acting, within and for the said County and State, appeared in person the within named _____ and _____ of Jack Collier East Company, Inc., and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this 27th day of December, 1974.

_____
Frances Stielman
Notary Public

My Commission Expires:

June 18, 1978

STATE OF ARKANSAS)            BOOK 1323 PAGE 11
                 ) ss:
COUNTY OF PULASKI)

        On this _____ day of _____, 1974, before me a Notary Public, duly commissioned, qualified and acting, within and for the said County and State, appeared in person the within named _____ (and _____) to me personally well known, who stated that they were the President and Secretary of Hodges, Vines, Fox, Castin & Associates, Inc., and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and behalf of said corporation, and further stated and acknowledged that they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

        IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this _____ day of _____, 1974.

                                             _____
                                                   Notary Public

My Commission Expires:

_____

#031484 FILED FOR RECORD January 8, 1975
AT 12:10 P.M., RECORDED January 9, 1975
[SEAL]               ROGER McNAIR, CIRCUIT CLERK